Okay, I think we're ready to begin. So welcome to this week of oral argument. We are supposed to be in Atlanta, Georgia, but obviously the virus has changed things for everybody, and this is going to be the very first Zoom session of oral arguments that the 11th Circuit has had, so we hope it all goes very well. Judge Lagoa, Judge Brasher, and I are very happy to welcome you all to this session with our first case, number 19-12224, Christopher Teasley versus the Warden of Macon State Prison. Mr. Malcolm, whenever you're ready. Thank you, Your Honor. May it please the court, my name is Clint Malcolm. I represent the appellant in this case. Appellant asked this court to reverse the district court's grant of habeas corpus relief. Strickland v. Washington is the clearly established federal law under the AEDPA when it comes to ineffective assistance of counsel claims, and Strickland requires a showing of actual prejudice to warrant relief. Here, Christopher Teasley did not show that a juror who was actually biased against him was seated on his jury, thus he did not meet that showing of actual prejudice under Strickland. Mr. Malcolm, may I just interrupt you for a second? I just want to confirm, you concede that the first prong of Strickland has meant that there was deficient performance? At this point, Your Honor, we are not contesting that any further. We did not concede it in state habeas, but the state habeas court disagreed with our argument, so yes, we are just going forward at this point in presenting argument on the prejudice prong under Strickland. Okay, thank you very much. Yes, Your Honor. We have, the appellant contends really that the district court erred for three reasons. One, that it erred when it applied the wrong standard of review in this case, that it reviewed the case de novo instead of under the applicable deferential standard under the AEDPA. Reason number two, we, appellant contends that the district court erred when it presumed prejudice, when actual prejudice under Strickland was required. And reason number three, that the district court erred when it said that the statute prohibiting no impeachment of a jury's narrow context, especially in, in consideration that Christopher Teasley presented no evidence other than the voir dire transcript in his state post-conviction proceedings. So, I'd like to start by addressing that first question about, about what we know about the juror, because it seems to me that there, there are basically five things that we know about the juror, and I just want to see if I have the totality of the evidence that's currently on the point. So, this is, these are the five things that I have, and I'm going to ask you what I might be missing, if anything. One, that the juror was marked as a defense favorable juror on co-counsel's notes. Two, that he owned several firearms, which was important to the defendant because of the theory of the case. Three, he didn't respond to a number of general questions about partiality and bias. Four, he was questioned individually by the prosecutor about potential bias against the state. And five, he responded by raising his hand to the, to the question about whether he might have trouble being a juror in a murder case about a shooting. Is there anything else that the record tells us about this juror that I might be missing? No, Your Honor. Essentially, those are the same determinations, the reasonable things we know about that juror, Juror Donaldson. The only other thing I would add, he was questioned towards the end of voir dire about a statement, I think, or a box he had checked on a questionnaire about a run-in with law enforcement or a family's run-in with law enforcement. I believe he disclosed that his brother had had a couple of DUI arrests and or convictions in a neighboring county. He was asked if that would, I believe, affect his ability in this case. I think he said no, not really. He didn't really think his brother was railroaded, and I believe he said he picked him up, or he picks him up from the work release program based on those DUIs. That would be the only thing I would add to what you said, Your Honor. And so your position is basically that given what we know about this juror, we're really just left to speculate as to why he might have raised his hand to that particular question that he did respond to. That's absolutely correct, Your Honor. The only thing that distinguished that last question from co-defendants counsel in prior ones, and I think you alluded to this, was the reference that it was a case that was going to involve a shooting. Before any questions were asked of the panel, the trial court did in fact read the charges to the panel, so the juror knew it was, the jury panel knew it was a murder case. They may not have known it was a case involving a shooting death and a shooting of another individual until that last question was asked where Juror Donaldson made that there was no link between that nonverbal response and anything else he said. The federal magistrate's report, which the district court adopted, attempted to, what I would argue, speculate as to why he raised his hand, but that's completely outside the state court record that was before the district court. Speculating that he raised his hand to show bias against Teasley because in the alternative he had said the state had treated his execution, that there just was no link between the two, so that that is nothing but supposition in regards to that, and that is not enough to make a showing of actual prejudice. Counsel, can you go back to addressing, you started the argument by saying that the district court magistrate applied the incorrect standard, a de novo standard, and I believe the standard here is what the application has to be, that it has to be objectively unreasonable, and that we have what the standard is for us. Yes, Your Honor, so the district court appellant believes erred in finding that the state habeas court made an unreasonable fact-finding under 2254 D2. That fact-finding was when the state habeas court said that this juror's responses during voir dire were equivocal in regards to showing actual bias against Christopher Teasley. An examination of the voir dire transcript clearly supports that fact-finding by the state habeas court. The state habeas court referenced all the other similar questions that this juror had not responded to and pointed to the lack of any evidence in that there was any actual bias this juror had against Christopher Teasley. That is by definition a fact-finding supported by the record, so the district court should have afforded the appropriate deference to that. Instead, the district court latched on to that word equivocal in the state habeas court's order and said that was an unreasonable fact-finding, therefore any legal conclusions that flowed from that were also unreasonable under 2254 D1, so therefore I am setting aside the deferential standard of review to the state court's decision and I'm going to review the claim de novo. Obviously, Your Honor, those are two very different standards of review. In federal habeas, when the district court is examining a state court conviction, it is whether the state court made an unreasonable application of clearly established federal law. There's no dispute here that Strickland v. Washington, I think, is the clearly established federal law, so the petitioner had to show that the state habeas court's application of Strickland was somehow unreasonable. As I said, it didn't go so much into that analysis, but it used this fact-finding to say that fact-finding was not supported by the record, therefore we're circumventing the deferential standard of review that is typical in these cases and going straight to de novo. That is our primary reason why appellant believes the district court erred on the standard of review analysis. I will say I don't think it matters. I think Teasley loses under either standard of review because there's just no evidence of actual bias in the state court record. Mr. Malcolm, can I ask you a question about the third point you said you were going to make to make sure that we at least discuss it a little bit? Yes, Your Honor. It goes to whether or not Mr. Teasley could have put on any evidence from Juror Donaldson. Although the order is not definitive, the state habeas court seemed to think that Mr. Teasley had the better of the argument on that point. Are there any cases from Georgia that explain whether a juror in Mr Donaldson's situation can be called to testify in a post conviction hearing? Your Honor, there were none directly on point that address this exact scenario, and I've been doing this for a while, and I have not seen this come up where there was a affirmative response to a fair and impartial question during voir dire, and then there was just simply nobody followed up with the juror about it. However, to answer your question, I would say there's nothing in the no impeachment statute, whether we're talking about the one that would have been applicable at the time of Teasley's motion for new trial or if we're talking about the more recent one that's been adopted in Georgia, which mirrors federal rule of evidence 606. Regardless of which one we're talking about there, the no impeachment statute is to preserve the sanctity of the jury's deliberations. Uh, in this case, the state, the petitioner, Mr Teasley presented no evidence in state habeas to try to supplement that voir dire transcript. Let me ask this. Let me let me just ask kind of a more fundamental what I view is more fundamental question. If the state of Georgia had an evidentiary rule that precluded Mr Teasley from establishing what he needed to establish, then wouldn't the right result be to allow him to introduce the evidence not to preclude the evidence? Well, I would agree with that, Your Honor. If he Trump's state evidentiary rule. Exactly. And we're here in federal habeas. So we're talking about constitutional alleged constitutional violations. So if my main issue with that third prong that Judge Gordon has brought up is Teasley presented or attempted to present no evidence in state habeas before the state habeas court did address the issue. Your point. Your point, then, is that Mr Teasley didn't try to call the juror didn't try to call the juror didn't try to supplement. Hey, what would this juror have said if he had been asked the follow up question during what ear? Um, nothing extrinsic other other than the body of transfer. That's all that was presented in state habeas. And based on that alone, there simply was nothing in the record to show that this juror was actually biased against him. So let me just see if I could if I could crystallize what you so the state habeas court gave Mr Teasley a hearing on his habeas petition, right? Multiple hearings. He had. He had a couple of hearings. Yes, Your Honor. And Mr Teasley did not attempt to subpoena the juror or somehow depose the juror at any of those hearings. No, we did not. And did Mr Teasley ever argue that the state of Georgia, um, that if the state of Georgia were precluding him from bringing the juror as a witness that, you know, the Constitution would trump that evidentiary rule. And so he should be allowed to bring the juror as a moment. Yes, Your Honor. Were you the state asked to take a position on that evidentiary issue at the state habeas proceeding or not? No, we weren't, Your Honor, because it didn't come up. There wasn't an attempt to present any evidence. So so we were asked to comment officially in regards to what whether he could present that evidence or not, it would be highly speculative. And obviously, the state habeas court would need to know, and I would have type of evidence they were presenting. Certainly, they could have presented a very broad juror affidavit that may have, um, went against the no impeachment statute. But there may have been provisions that they could have included in there that certainly would not have in this narrow context. So the hiding behind that no impeachment statute is simply not a reason, um, for not attempting to present that evidence in state habeas. And okay, Miss Wagner, whenever you're ready, may it please the court. Laura Wagner on behalf of Christopher Teasley. We're here today because a juror who swore that he could not be fair and impartial served on the jury that convicted Mr Teasley in his criminal trial. Defense counsel asked a clear question regarding fairness. She asked, Is there anyone here who feels that you can't be fair and impartial in this case is a murder trial where it's alleged was a shooting the type of case that you just can't be fair on. In response to this question, juror Donaldson raised his hands and announced his name. But despite having informed counsel and the court of his bias, he ended up serving on the jury that convicted Mr Teasley. As we've stated, the district court granted habeas relief because it found both prongs of Strickland, deficient performance and prejudice. Deficient performance had already been established in the state. I had a question about that. So this was a this was an ineffective assistance of appellate counsel claim. That's right, Your Honor. So what exactly? So appellate counsel said, I think this was her testimony. I never even knew this existed. You know, my bad. Clearly deficient performance, I think. But what was it that appellate counsel was supposed to have done? Was she supposed to have filed a claim ineffective assistance of trial counsel? Or was she supposed to have just raised this just on plain air review to the Georgia appellate courts? But specifically, what she says? Yes, Your Honor. She would have raised it as an ineffective assistance of trial counsel claim, and she actually in her deposition also stated that she would have considered bringing it perhaps as a mistake by the judge or even prosecutorial misconduct since it wasn't, um, you know, spoken of again by either the court or the prosecutor. But it primarily would have been raised as ineffective assistance of trial counsel. So ineffective assistance of and has two prongs. It has deficient performance of trial counsel and prejudice of that deficient performance. Where do we have either admission by the state or a finding by a habeas court or something that trial counsel was deficient? The first prong of that claim that she was supposed to bring? Well, the unappeal, you know, the ineffective assistance of appellate counsel standard is whether there is a reasonable likelihood that the outcome of the appeal would have been different. And under established Georgia law, it's axiomatic that where a verdict is rendered by a jury with a biased member, that verdict must be set aside. So here there's at least a reasonable likelihood that the outcome of appeal would have been different. If appellate counsel had raised this issue, and that is what the state, uh, the state habeas court recognized. So I just and so just to be clear, so that's not an ineffective assistance of trial counsel claim. That's something else, right? Where the appellate counsel would have just said, you know, look, this this should have been reversed on plain air review or something like that to the Court of Appeals. Yes, we've raised this as ineffective assistance of appellate counsel for not raising ineffective assistance of trial counsel. And so just to go back to that, so ineffective assistance of trial counsel has two prongs. Where is the deficient performance of trial counsel prong? Oh, so the trial counsel testified at the habeas hearing on trial counsel actually ended up getting disbarred a couple of years after this trial. But he testified. Basically, I deferred to the other two attorneys. They practiced here. You know, I didn't have a strategic reason for not following up on this. The only reason you wouldn't follow up on something like that would be if you knew the juror, and I didn't know the juror. I just said that, you know, she had marked him as a favorable juror. But she also testified at the state habeas hearing, and she testified that, you know, more than half of the jurors she had plus signs for. Most of those, the large majority, I think more than 80% were the gun owners. And she also testified that she just missed juror Donaldson's response to this question. She was asked, she said, I only write down things I need to remember. We said, well, would you need to remember if somebody said they can't be fair and So she testified that she just missed this as well. And so, you know, the state habeas courts finding that performance was deficient isn't an issue here. The only thing at issue on this appeal is prejudice, and that turns on whether juror Donaldson was actually biased. The state and in fact, the state habeas court can see that if an actually biased juror serves on a jury, then the prejudice prong is established under But despite juror Donaldson's clear, untested, unretracted statement that he could not be fair and impartial, the state habeas court found that he was not actually biased. Counsel, let me ask you a question. Let me stop you there, because obviously you're focusing on one aspect of what what happened in the one year, but then to state habeas actually look at the did not respond in a biased manner with with with regards to other questions that were asked. Yes, Your Honor. And that's problematic for a few reasons. First, as to other circuit courts of appeal have held when you have an unretracted statement of bias that's not followed by an assurance of impartiality. That juror is actually biased and a state court determination to the contrary is In those cases are the Fifth Circuit and Virgil and the Sixth Circuit and Miller and they're, you know, Virgil, they said, since the two jurors unequivocally express their bias and were never rehabilitated, their bias was patent. And that's enough to overcome you. That's clear and convincing evidence to overcome the presumption of correctness that's afforded to state courts. And while this court has held that you look at the totality of the circumstances in deciding an ineffective assistance claim. The rule I set forth in patent and followed in both Virgil and Miller is that assurances of impartiality, they follow after a juror exposes potential bias. So in patent, the Supreme Court said that once potential bias is exposed, whether the juror is biased is plainly a question of historical fact. Did the juror swear that he could set aside any opinion he might hold and decide the case on the evidence and should the jurors assurance of impartiality have been believed? Here, we don't even get to the second part of that test, whether the jurors assurance of impartiality should be believed because he never gave one. And as the Sixth Circuit also recognized in Hughes, didn't the court instruct the jurors that they had to be impartial and set aside all of their I mean, didn't the court give those instructions to the jury? Your Honor, the court administered the it's pretty antiquated. It says they shall well and truly try the case. There was no instruction to the jurors, you know, in the charge that you must set aside biases and be and be fair and impartial. Um, and in any event, those jury instructions are given in every case, and they can't overcome and express admission of bias. Let me do that, then, you know, those cases that you were talking about. I mean, I read those cases and in those cases, you know, someone said, I'm you know, here's the reason I'm biased. I'm biased against this party. I have something that makes me biased here. We have sort of a different situation, it seems to me, where the question is just Is there anyone who feels that in this case in a murder trial where it's alleged was a shooting? Is there anyone here who feels that you can't be fair and impartial in this case? Is that the type of case that you couldn't be fair on? And so then the juror raises his hand, and we don't really know what I mean. Unlike those other cases, we don't really seem to know anything specific about what he was trying to indicate by raising his hand. Is that why is that not a good way to distinguish these cases? So, Your Honor, we don't know why Mr Donaldson couldn't be fair and impartial in this case because of the deficient performance and the lack of follow up questions. But we know that he was unable to be fair and impartial by his own sworn statement. And in fact, the court in Virgil acknowledged that there were no follow up questions in that case either. And they said the process failure in this case stems as much from the unknown as the known, because no effort was made to explore the depth or intensity of the juror's bias, and no question was put to them as to whether they could put aside their preconceived notions and decide the case on the evidence. That's the same situation we have here. And here, I guess Miller is one of the other cases. And yes, while we knew the reasons that the juror and Miller thought she might not be able to be fair, that she knew the victim in the case, she also stated twice, I think I could be fair. And she stated twice, I believe I could be fair. But even in the face of that, the Sixth Circuit held that if you follow that up with the statement, but I do have some feelings of her, you're gonna need a subsequent assurance of impartiality. And that subsequent assurance of impartiality is gonna have to be a verbal response to a question that was posed to the juror about the juror's declared or exposed bias. So yes, we don't know why he was unable to be fair and impartial, but we know that he was unable to be fair and impartial. And the Sixth Amendment guarantees all criminal defendants the right to an impartial jury, and we didn't have that here. And so that establishes prejudice in this case. Ms. Wagner, were you required to try to put on any evidence concerning Juror Donaldson, this post conviction hearing? No, Your Honor, and there's a few reasons for that. The first one was it wasn't necessary. The trial transcript is clear evidence that Juror Donaldson couldn't be fair and impartial. The second reason is that it's not allowed. I believe it was asked whether there are any Georgia cases on point, and in fact there are, under both the old rule and the new rule. We cited them in our brief in Wright v. State, that's 233 Georgia App 358. It's from 1998, decided under the old rule. There, a juror didn't disclose that he knew one of the victims, because he didn't recognize her name. And when she appeared in court, he realized she was a student at the school where he was the vice principal, and he didn't disclose that. And so... Counsel, may I ask you a question though? My understanding of the record, and please correct me if I'm wrong, is that Mr. Teasley never raised in his habeas the fact that he was precluded or denied due process based on that Georgia law, that he couldn't bring that up. No, Your Honor, because the point is, there is plenty of sufficient evidence in the record. That's... That's not my question. My question is, was that raised in the habeas petition? I believe it was not. No, that... The alternative ruling that Judge Dorey made was not one that had been solicited in the habeas petition. And a reason that juror testimony isn't required here... I mean, it wasn't required in Hughes or Miller or Virgil. The state hasn't pointed to a case where it was required. And under Georgia law, where a juror is not excused... But you're asking... But you would be asking us, we would be, for the first time, addressing that when that was never raised in the state habeas, correct? And the state had the opportunity to respond to that line of argument. The issue was raised in state habeas as reflected in the judge's... The state habeas judge's final order, but it was not a focus of the federal habeas decision, because we have clear and convincing evidence that the state habeas court made an unreasonable factual determination. And the law in Georgia, when a juror is... Exposes potential bias, and there's never an assurance of impartiality. The appellate courts don't remand those cases for a hearing to see what the juror would have said on follow up questions. The court... The appellate courts here reverse those cases. So one example of that is Carter v. State, and that's 326, Georgia App 144. Another one's McGuire v. State, 287, Georgia App 764. Both of those cases are cases where a juror exposed some potential bias by saying they might need to hear from the defendant. The council did move to strike a jurors for cause, and the state court denied those strikes. The court of appeals held... Those seem to be different cases because the juror was suggesting, look, I might be biased because I'm not going to follow the court's instruction. I'm gonna want the defendant to testify no matter what. And so we understand by that statement what the juror meant, what the bias was, why it would be a problem. In this case, it just doesn't seem like we have the same transcript. Right. In this case, again, we don't know the reason for the bias, and that's because of the deficient performance of trial counsel. All we know is that... Is it possible that the juror was suggesting that he might be biased against the state? No, Your Honor. That would be unreasonable reading of the transcript. So when Ms. Anderson asked the question, she framed it in a way to be asking if there was bias against the defense. She said, I'm an animal lover. I could never serve as a juror in a cruelty to animals case. Now, are there any of you where there's any type of case you just couldn't be fair on, where it's alleged was a shooting, you just couldn't be fair? And so the clear import of the question was whether the juror would be biased against the defense. And I think, as Your Honor pointed out at the beginning in your fourth point, that juror Donaldson had been questioned about potential bias to the state, and as the district court noted, when he had the chance to air a grievance against the state, he did not. So the reading of the transcript is clear that his bias would have been against the defense of this case. Can I ask you... You're about to lose your time, but I just wanna clarify the issue about the evidentiary rule. I think you're being very consistent with your argument below, and I'm gonna explain what I think your argument is, and just tell me if I'm wrong. I think your argument is like, is we didn't need to call the juror because this is the transcript that we have, and we liked this transcript. We thought it established that we were due habeas relief. And the evidentiary rule is our explanation for why we didn't call the juror, and not a separate constitutional argument for why habeas relief should be granted. I think that's your argument. Am I wrong about that? No, Your Honor, but I do agree with the state court's alternative conclusion that should this court determine against the plain language of current rule 606, the former Georgia rule, the federal counterpart, U.S. Supreme Court President, and Georgia Supreme Court President, that somehow the juror would have been allowed to testify. I think that would be incorrect. And because he wasn't, if the court finds that it wasn't satisfied with the record... So this is where I guess I don't understand your argument. If it would be a constitutional violation such that federal habeas should be granted if the juror didn't testify, then the right result would be the juror should be allowed to testify, right? You're saying that the Constitution... I don't think you're really saying this, but I think the district court did. The district court seemed to be saying that the Constitution was violated because the juror was not able to testify. And the remedy for a constitutional violation on the evidentiary rule is to allow the evidence in, right? Right. But the Supreme Court in Worcester had an opportunity, that's 574 U.S. 40, to make an exception to the evidentiary rule recently in a case where there was trying to show that a juror lied during voir dire, and they said that is not one of the circumstances in which anything besides outside influences can come in. The Supreme Court has only enumerated one circumstance beside outside influences where the rule actually yields, and that's when there's evidence of juror bias, and that's from Peña Rodriguez, which was from 2017, and is cited in our brief. So I don't... I haven't found a case similar to this case, but it does not seem like the evidentiary rule would yield. And so this would be the rare case under Smith v. Phillips, where although there was a hearing, at the hearing there was not an opportunity to prove actual bias. But again, we did prove actual bias, because the voir dire transcript is clear and convincing evidence, uncontroverted, no assurance of impartiality was given. So 606 should be irrelevant to the analysis. Alright. Thank you very much, Ms. Magel. We appreciate it. Thank you. Okay, Mr. Malcolm, you're back on, but I think you have your mute button on. Thank you, Your Honor. I did. Can you hear me now? Let me ask you a question, and I'll give you a little bit of extra time on your own after you answer this. The District Court explained that in an appellate... In a case involving the alleged ineffectiveness of appellate counsel, the things you have to look at in terms of prejudice is whether or not had counsel made the argument that she was supposed to make, the State Appellate Court would have granted relief. The District Court thought the answer to that question was yes, but you don't address that in your brief. Have you waived that argument? No, I don't believe we have, Your Honor. I think we did address that, maybe not directly on point, but the District Court's order, I think page nine of that order, when it says, even if this court were to agree with the State Habeas Corpus, that we do not know whether Juror Donaldson was or was not biased, caution dictates that petitioner be given a new trial. Well, that's simply in contravention of everything that Strickland stands for. So that was essentially the point I was trying to make, I think, in the second portion of our brief in regards to our issue with the District Court's handling of prejudice in general. But if you're dealing with an ineffective assistance of appellate counsel claim, and the argument is that appellate counsel failed to make an argument that she should have made, is the District Court right that prejudice in part turns on whether or not the State Appellate Court would have granted relief had the argument been made? Well, I think the prejudice prong is whether there was a reasonable probability that there would have been a different outcome. So if appellate counsel had raised the issue and developed it properly, so here I think appellate counsel would have needed to develop it at the motion for a new trial stage and then raise the trial counsel ineffectiveness claim on direct appeal. So in essence... Let me ask you a question and I apologize, but your opposing counsel suggested in her argument that the Georgia State Court would have automatically overturned based on impaneling a impartial juror. Is that correct? Is that the state of the law? Your Honor, there has to be some sort of link between what this juror said and actual bias against the petitioner in the case. So the law in Georgia at the time of this state habeas proceedings was essentially, if an actually biased juror who was biased against this defendant was seated on the jury, then yes, potentially prejudice could be shown. Our main argument is that there was no showing of actual bias against petitioner in this state court record. That's why the state habeas court denied relief and found there was no prejudice, and that is essentially where the district court got it wrong. But again, Mr. Malcolm, it seems to me that you didn't address that ruling of the district court in your brief. The district court said on page nine, even if this court were to agree with the state habeas court that we do not know whether Mr. Donaldson was or was not biased, caution dictates that petitioner be given a new trial, and it is reasonably probable that the Georgia Supreme Court would have agreed. You don't take issue with that ruling in your brief, right? I think we do, Your Honor, because we challenge the district court's presumption of prejudice, which is that's how I read that provision you just read out of the district court's order. It's saying basically that there doesn't have to be an outcome determinative prejudice analysis. There doesn't have to be any sort of analysis whether a juror was actually biased against Teasley. That was error because that essentially is a presumption of prejudice that the Supreme Court of the United States has not acknowledged in this type of case. So I do believe we addressed that in our brief, Your Honor. Um, at least that was our intent. Well, your argument is that there's been no showing of prejudice, right? District court was wrong. Basically overrule the state court's finding on lack of prejudice. But I'm suggesting to you that the district court had an alternative view of prejudice, which is that if the claim had been raised on direct appeal by granted a new trial, and I just don't see that addressed anywhere in your brief. Am I wrong about that? Well, like I said, I believe you are, Your Honor. I believe when we're talking about presumption of prejudice, I may not have very artfully crafted that in our brief. But that is essentially what we're challenging so that the district court got the prejudice determination wrong because of essentially what we're talking about. The district court did not gauge and consider the factors it needed to in making that actual prejudice determination. It completely circumvented what Strickland says about actual prejudice and basically presumed prejudice and said this petitioner did not have to present anything that was outcome determinative. And so, yes, Your Honor, I believe we did challenge that, and we did address that in our brief. Okay, I told you I regular rebuttal time, so I'll go ahead and do that now. So you've got a couple minutes. Thank you, Your Honor. I don't have very much more to say. Just just a couple points back back to my original point, and I hope I made this clearly. The main argument appellant is making is that there was no evidence of actual bias against Christopher Teasley in the state court record because there was not. There is no showing of actual prejudice. Simply raising his this juror raising his hand in response to that last question, which had been asked in a similar fashion numerous times before that is not enough to show actual prejudice. In this case, not enough to show actual bias of this juror against, um, Mr Teasley. Uh, if there are no further questions that would conclude my argument. Thank you, Your Honor. Right. Thank you both very much. We really appreciate it. Thank you.